El Pueblo de Puerto Rico, demandante y apelado, *v.* José Cases, acusado y apelante.

Núm. 9545.—*Sometido:* Enero 22, 1943. *Resuelto:* Febrero 11, 1943.

*Dubón & Ochoteco*, abogados del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El Fiscal del Distrito de San Juan formuló tres acusaciones contra José Cases, una por asesinato, otra por poseer un arma de fuego sin registrar y otra por portar un arma prohibida.

Se llamó a juicio el caso de asesinato y terminada la práctica de la evidencia, en la sesión del 9 de diciembre de 1941, ocurrió lo que sigue:

"Sr. Díaz Collazo: Con la venia de la corte, en el caso de El Pueblo de Puerto Rico contra José Cases, por un delito de portar armas, el fiscal y la defensa hemos estipulado someterlo por la prueba con el récord taquigráfico de la prueba que comprende la de cargo en el caso de *El Pueblo* v. *José Cases* por asesinato, y la prueba de la defensa, exceptuando de esos procedimientos los incidentes relacionados con la constitución del jurado y las instrucciones de su señoría. En el caso de El Pueblo de Puerto Rico contra José Cases, por una supuesta violación de la ley que regula y gobierna la inscripción de armas de fuego, hemos estipulado someter el caso con la misma prueba del caso de asesinato contra José Cases, y la defensa acepta que el revólver presentado en evidencia en el caso de asesinato no está inscrito a nombre de José Cases ni ha estado nunca inscrito a nombre de José Cases. Y así sometidos que se nos conceda un término simultáneo de cinco días para presentar cualquier memorándum que las partes estimen conveniente en apoyo de sus respectivas pretensiones.

"Sr. Fiscal Aponte: Nosotros no tenemos inconveniente en aceptar esa estipulación, pero en cuanto a eso de la inscripción del arma, que se haga constar en el récord que el revólver no está inscrito en el Libro Registro de Inscripciones de Armas de la Municipalidad de Río Piedras, donde reside el acusado.

"Sr. Díaz Collazo: Que el revólver no se encuentra inscrito donde debía estar inscrito.

"Sr. Fiscal Gallardo: Y que se haga constar que el acusado renuncia al término para dictar sentencia.

"Sr. Díaz Collazo: El caso no está sometido por esta parte. El caso estará sometido cuando se presenten los memorandums, entonces es que los casos estarán sometidos.

"La corte: ¿La defensa solicita cinco días para someter el caso por alegato?

"Sr. Díaz Collazo: Sí.

"La corte: Eso equivale a una renuncia al término para dictar sentencia. Ahora, una vez sometidos los casos, ¿renuncia la defensa o no al término para dictar sentencia?

"Sr. Díaz Collazo: Una vez que estén sometidos, no tenemos inconveniente en que la corte se tome el tiempo necesario para dictar

sentencia, y no tenemos inconveniente en renunciar al término que fija la ley para dictar sentencia.

"La corte: Se citará al acusado cuando se vaya a dictar sentencia."

El jurado, en el caso de asesinato, rindió un veredicto de no culpable. Los casos de registro de arma y portación de arma fueron resueltos así:

"El día 16 de diciembre de 1941 se citó al acusado para que compareciera al acto de dictarse sentencia por la corte compareciendo el acusado, José Cases, representado por el licenciado Díaz Collazo. Y la corte, en el momento de dictar la sentencia, hizo las siguientes manifestaciones:

"La corte: La corte no ve razón ninguna para examinar el récord de este caso, pues tiene la evidencia fresca en su mente. Se da cuenta, por las distintas maniobras del acusado, que el acusado está interesado en dilatar la resolución de estos casos, y no ve razón alguna por la cual la corte deba cooperar más de lo que ya ha cooperado con esas maniobras. En verdad que es difícil la resolución de este caso, y por esa razón no comparto el criterio de aquellos que se han permitido criticar al jurado que tuvo que resolver sobre otro caso, pero fundado en los mismos hechos por los cuales se han sometido los dos *misdemeanors* que ahora penden ante esta corte. Y es difícil porque de la prueba se ve que el acusado es un maleante, un *gangster*, un *racketeer*. Esto se ve claro, y hace difícil el caso. Siendo el acusado lo que es, el fin deseable para la sociedad es que el acusado esté en la cárcel o en presidio. Eso es lo que debía ser. Ahora, el fin no justifica los medios. Y si no se le ha probado al acusado el delito que se le imputa, aunque sea conveniente que el acusado esté en la cárcel o en el presidio, las cortes deben ser las últimas en ignorar esa regla tan esencial en una democracia, de que el fin no justifica los medios. Por esa razón digo que es difícil la resolución de este caso, porque estamos ante esa regla, ante ese principio que tenemos que sostener, de que el fin no justifica los medios, y estamos, por otro lado, ante un peligro peor, de que por querer cumplir con esa regla caigamos en el error contrario de favorecer demasiado al acusado bajo la creencia errónea de que precisamente porque es un *racketeer*, un *gangster*, debamos borrar eso de nuestra mente hasta tal punto que nos olvidemos de la clase de caso que tenemos ante nosotros, y no sepamos pesar la evidencia como debe pesarse. Porque está bien que no se condene al acusado por ser

un *racketeer* o *gangster,* pero no está bien que olvidemos el ambiente en que vive el acusado, el ambiente en que viven los testigos del fiscal, y el ambiente en que viven los testigos de la defensa, que han venido a tratar de probar la coartada, y a tratar de desacreditar alguno o algunos de los testigos del fiscal. Y digo que el caso ha sido difícil por lo que ya he expuesto. Si fuera un caso corriente, nada de difícil tendría. Es un caso sencillo. Tenemos en la prueba del fiscal—que por cierto no es la mejor del mundo—prueba de gente tan maleante como el acusado, o peor. Ahora bien, tenemos una prueba de defensa falsa, fabricada. Normalmente es completamente fácil escoger entre esas dos clases de prueba. Cuando el fiscal trae un caso de ex convictos, de presidiarios, aunque no sea el mejor caso del mundo, si la defensa trae una prueba fabricada para demostrar que esos convictos han mentido, la resolución es fácil. Y en este caso la resolución debió haber sido fácil y si no ha sido fácil, lo ha sido exclusivamente por la preocupación del juzgador de no castigar a un hombre por un delito a menos que la prueba sea suficiente, y por la preocupación de que no se le debe dar demasiado peso a las circunstancias en que vive, se ha desenvuelto y se desenvuelve el acusado.

"En el caso 17230, sobre registro de armas, la corte declara al acusado culpable. En el caso 17231, sobre portar armas, la corte declara al acusado culpable. En el caso 17230, sobre registro de armas, condena al acusado a sufrir dos años de cárcel. En el caso 17231, sobre portar armas, la corte condena al acusado a cumplir la pena de seis meses de cárcel.

"Quiero que conste claramente en el récord la forma en que se dictaron las sentencias, a los fines de que conste que son sentencias consecutivas y no concurrentes."

No conforme, el acusado apeló de las sentencias condenatorias, tramitándose conjuntamente sus recursos.

Se pide la revocación de dichas sentencias y si a ello no hubiera lugar, la modificación de una de ellas. Se imputa a la corte sentenciadora error manifiesto en la apreciación de la prueba y error manifiesto al no resolver en favor del acusado la duda que surgió de la prueba.

■■ Hemos estudiado la evidencia y, aparte de la circunstancial, existe prueba directa de que el revólver no registrado presentado en el juicio era el mismo que portaba

y con el que el acusado José Cases dió muerte a Guillermo Carreras, su socio en negocios ilícitos, en la noche del veintiuno de septiembre de 1941, dentro del distrito judicial de San Juan. El testimonio de José Sierra es terminante sobre el particular. Todo depende de si merece o no crédito. La corte sentenciadora se lo dió y por más esfuerzos que ha hecho el apelante en su largo y bien trabajado alegato, no ha logrado convencernos de que la corte de distrito no estuviera acertada en su conclusión.

De las palabras que el juez sentenciador pronunciara, no se deduce que tuviera duda razonable y fundada de la culpabilidad del acusado, ni las circunstancias que concurren imponen como consecuencia necesaria la existencia de esa duda. Lo que dichas palabras revelan es la reacción de una conciencia honrada al darse cuenta de la grave responsabilidad que pesa sobre ella.

El juez no quiso inculpar abiertamente al jurado que rindió el veredicto de "no culpable" en el caso de asesinato, al contrario, tendió a explicar su conducta, pero no lo siguió en su juicio porque su convicción sobre la culpabilidad del acusado era otra. En los casos de registro y portación de armas recaía sobre él la responsabilidad plena, la de la apreciación de los hechos y la ley íntegramente, debiendo asumirla independientemente, por sí solo, llegando a sus conclusiones a virtud de su propia observación. Y eso fué lo que hizo, tratando de ir a la verdad sin dejarse influir por la condición del acusado y los testigos.

Sabía que el testigo Sierra a quien tenía que dar crédito para condenar al acusado, era un criminal también, pero los criminales suelen decir la verdad y pueden y deben ser creídos en propias ocasiones. Ello es conforme a la naturaleza humana. Es cierto que sus testimonios deben examinarse con cautela, pero habidas en consideración las circunstancias que aquí concurren, ninguna de ellas obliga al juzgador a concluir que el testimonio de Sierra era increíble.

■ No se cometieron, pues, los errores señalados. En cuanto a la reducción de la pena impuesta en el caso de registro de armas, procede.

Cuando el acusado fué condenado regía el artículo 10 de la Ley 14 de julio 8 de 1936, en estos términos:

"Las infracciones a las disposiciones de esta Ley serán consideradas como un delito menos grave (*misdemeanor*) y la persona que fuere declarada convicta del mismo, será castigada con pena de cárcel no menor de seis (6) meses ni mayor de dos (2) años, excepto en cuanto se relaciona a la compraventa de armas, de contrabando, que se castigará según lo dispuesto en el artículo 6."

Y la corte sentenciadora impuso al acusado el máximo de la pena o sea dos años.

Luego el artículo transcrito fué enmendado por la Ley 78 de mayo 5, 1942, como sigue:

"Las infracciones a las disposiciones de esta Ley serán consideradas como delito menos grave (*misdemeanor*), y la persona que fuere declarada convicta del mismo será castigada, por la primera infracción con multa no menor de cincuenta (50) dólares o cárcel por un término no menor de un (1) mes ni mayor de seis (6) meses, o con ambas penas a discreción del tribunal; y por la segunda y subsiguientes infracciones con cárcel por un término no menor de seis (6) meses ni mayor de dos (2) años, excepto en cuanto se relaciona con la compraventa de armas de contrabando, que se castigará según lo dispuesto en el artículo 6."

Y de acuerdo con la jurisprudencia aplicable, el acusado tiene derecho a los beneficios de la enmienda.

Refiriéndose esta propia corte a otra enmienda a la misma Ley 14 de 1936, en el caso del *Pueblo* v. *Pérez,* 52 D.P.R. 169, se expresó así:

"Victoriano Pérez fué convicto de tener en su posesión un arma de fuego sin haberla registrado, todo esto en violación de la Ley núm. 14 de 1936 ((2) pág. 129). Apeló de la sentencia. Durante la pendencia de su apelación la Asamblea Legislativa aprobó la Ley núm. 75 de marzo 12, 1937. Esta Ley cambió sustancialmente algunas de las disposiciones de la ley anterior, y fijó un nuevo término a contar de la fecha de la misma para el registro de armas de fuego.

El apelante sostiene que la ley anterior fué enteramente derogada por la posterior y que ya que bajo esta última ley el tiempo para registrar las armas fué prorrogado, el apelante, aun en apelación, tiene derecho a gozar del beneficio del término así prorrogado. Esta es la regla general."

Y recientemente, en el caso del *Pueblo* v. *Otero*, 61 D.P.R. 36, resolvió, copiando del resumen, lo que sigue:

"Convertida la pena mínima bajo la Ley núm. 14 de 1936 ((2) pág. 129) en la máxima bajo la ley enmendatoria núm. 78 de 1942 (pág. 615), dentro de las circunstancias del caso y en el ejercicio de su discreción este tribunal modifica la sentencia en el sentido de imponer al apelante la pena mínima que autoriza la ley de 1942, dándole así el beneficio del estatuto enmendatorio."

*En tal virtud la pena será reducida a seis meses de cárcel que es el máximo según la enmienda. Y así modificada la dictada en el caso de registro de armas, procede la confirmación de ambas sentencias apeladas.*

El Juez Asociado Sr. Snyder no intervino.