EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN ORIOL CASTRO, acusado y apelante.

Núm. 10264.—*Sometido:* Abril 18, 1944. *Resuelto:* Abril 26, 1944.

*Angel M. Villamil,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué convicto del infame crimen contra natura y sentenciado a cumplir cinco años de presidio con trabajos forzados. La sentencia fué dictada el 16 de febrero de 1943. Para aquella fecha ese delito se castigaba con pena de presidio por un término mínimo de cinco años. Posteriormente, a virtud de la Ley núm. 42 de 4 de mayo de 1943, Leyes de Puerto Rico, 1943, pág. 107, la pena del delito fué fijada en un mínimo de un año y un máximo de diez años de presidio.

En su alegato ante este tribunal el acusado no imputa error alguno a la corte inferior. Por el contrario, admite la comisión del delito, pero alega que como siempre ha gozado de buena reputación como hombre de orden y trabajador en la comunidad, y que como el delito fué cometido bajo la influencia del licor, tiene derecho según él a que se le dé el beneficio de la rebaja de la pena, y que como la que se le impuso era la mínima que entonces fijaba el artículo 278 del

Código Penal, debemos ahora reducirla a un año de presidio, que es la pena mínima en la actualidad. El fiscal de este tribunal se allanó tanto en su informe escrito como en el oral a la rebaja solicitada, invocando los casos de *Pueblo* v. *Pérez*, 52 D.P.R. 169, *Pueblo* v. *Otero*, 61 D.P.R. 36, y *Pueblo* v. *Cases*, 61 D.P.R. 383.

El reducir la pena al mínimo que ahora fija la ley es discrecional en este tribunal. *Pueblo* v. *Otero*, supra. Partiendo de esa base, la cuestión a resolver es si dentro de las circunstancias de este caso, haríamos buen uso de esa discreción reduciendo a un año de presidio la sentencia de cinco años impuesta por la corte sentenciadora.

De conformidad con la prueba que tuvo ante sí el jurado, y a la cual dió crédito, la víctima fué un niño que sólo contaba diez años de edad en la fecha del crimen. Aquella noche, él y su hermano menor se hallaban jugando con un carrito en la calle Pomarrosas de Santurce. Un individuo, Tomás Muñoz, quien se declaró culpable de este mismo delito, vino donde el niño y le dijo que fuera a su habitación, cerca de aquel sitio, para regalarle una sinfonía. Los dos niños fueron con Muñoz al apartamiento de éste. Allí estaba el acusado, tocando una guitarra en la sala del pequeño apartamiento. El más joven de los niños permaneció en la sala y el mayor fué conducido por Muñoz al pequeño dormitorio contiguo, donde había una cama. Muñoz le quitó los pantalones, y entonces el acusado realizó actos carnales con el menor, valiéndose de una pomada que mandaron a buscar o tenían allí al efecto para facilitar la penetración. Una vez que terminó el acusado la realización del acto carnal, vino Muñoz y realizó también los mismos actos con el indicado menor. Mientras esto sucedía otros niños que vieron desde el exterior del edificio a través de una rendija lo que estaba sucediendo, avisaron a la madre de los dos niños, y ésta, después de llevarse sus hijos, dió cuenta a la policía, quien arrestó al acusado y a su compañero Muñoz, ocupándose allí

y siendo presentados en evidencia no sólo el frasco conteniendo la pomada, si que también el resto de ciertas bebidas, consistentes en ron y pepsi cola que el acusado y sus compañeros daban a beber a estos niños. [2] Parece conveniente agregar que aunque en su alegato el abogado del acusado arguye que éste se hallaba bajo la influencia del licor—y dicho sea de paso, esa circunstancia no constituiría justificación ni excusa para la comisión del delito—, en la declaración que prestó ante el jurado, el acusado aseguró que él no había tomado licor en aquellos momentos ni acostumbraba tomarlo, limitando su defensa a negar que estuviera en aquel sitio en el momento de realizarse los actos delictivos, pero admitiendo que llegó después a cobrarle a Muñoz el resto del precio de una guitarra que pocos días antes le había vendido, y que hallándose en la casa de Muñoz llegó la policía, quien los arrestó conduciéndolos al cuartel.

Dadas las circunstancias expuestas, haríamos mal uso de nuestra discreción si redujésemos la pena de cinco años de presidio impuesta al acusado apelante. No abrigamos duda alguna de que el legislador, al reducir el mínimo de la pena de este delito, no lo hizo con la intención de que esa pena mínima fuese aplicada a casos como el presente, reveladores de un alto grado de maldad y perversión moral por parte del acusado, y seguramente, dadas estas circunstancias, el juez de la corte inferior tampoco hubiera impuesto la pena mínima de un año que el acusado solicita le sea impuesta.

El caso de *Pueblo* v. *Pérez,* supra, que invoca el fiscal, no es aplicable. En aquél el acusado fué convicto de tener en su posesión un arma de fuego sin haberla registrado. Apeló de la sentencia, y estando pendiente su recurso de apelación la Asamblea Legislativa aprobó la Ley núm. 75 de 12 de marzo de 1937, que cambió sustancialmente algunas de las disposiciones de la ley anterior y fijó un nuevo término, a contar de la vigencia de la misma, para el registro de armas de fuego. Se dijo entonces por este Tribunal que ha-

biéndose prorrogado el término para registrar el arma durante la apelación, el acusado tenía derecho a gozar del beneficio del término así prorrogado para registrar el arma, ordenándose el sobreseimiento y archivo de la causa.

En el de *Pueblo* v. *Otero,* supra, también se trataba de una infracción a la Ley sobre Registro de Armas, en el cual la corte inferior había impuesto al acusado la pena mínima de seis meses. El máximo de la pena entonces era dos años. Mientras estaba pendiente el recurso de apelación, se redujo la penalidad del delito, de forma que el máximo era seis meses y el mínimo un mes de cárcel. No concurrió circunstancia alguna que demandase una pena mayor que el mínimo así reducido, y este tribunal, haciendo buen uso de su discreción, la redujo a un mes de cárcel.

Y por último el caso de *Pueblo* v. *Cases,* supra, tampoco es aplicable. Allí el acusado con fecha 16 de diciembre de 1941 fué convicto de los delitos de portar armas y de infracción a la Ley sobre Registro de Armas. Mientras estaba pendiente el recurso de apelación, la Ley sobre Registro de Armas fué enmendada el 5 de mayo de 1942, de suerte que el máximo de la pena fué fijado en seis meses de cárcel por la primera infracción. Y este tribunal, al revisar dichas sentencias, confirmó la de portar armas y modificó la de infracción a la Ley sobre Registro de Armas, reduciéndola de dos años que le había impuesto la corte sentenciadora y que era el máximo en la.fecha de aquella sentencia, a seis meses de cárcel que era el máximo que podía imponérsele de conformidad con la ley vigente en la fecha en que se dictó la sentencia en apelación.

Concedemos que pueden existir casos de delito *contra natura* en los cuales las circunstancias concurrentes justifiquen y hasta demanden la imposición de la pena mínima de un año; pero éste dista mucho de ser uno de esos casos. El hombre que así abusa de la inocencia y debilidad de un niño, utilizándolo de instrumento para satisfacer sus bestiales ins-

tintos, no es merecedor de la clemencia que él no tuvo para con una criatura ignorante e indefensa.

*Procede por lo expuesto la confirmación de la sentencia.*

El Juez Presidente Sr. Travieso no intervino.